**Tonini v. PennDOT**

*Walter F. Cameron Jr., deputy counsel,* for PennDOT.

*D. Keith Melenyzer,* for appellant.

LOUGHRAN, *J.,* June 26, 1991—Petitioner, Roger Tonini, took an appeal on October 24, 1990 from a one-year suspension of his operating privileges by the Commonwealth for an alleged "refusal" to submit to a breathalyzer test. Initially a hearing was scheduled by this court for January 4, 1991 at 1:30 p.m. Due to a personal family emergency of the court, the matter had to be continued and rescheduled for Monday, April 22, 1991 at 1:30 p.m.

After a hearing in the within matter on April 22, 1991, petitioner requested that he would like to submit supporting medical evidence by way of deposition, as to the physical condition of petitioner. This court granted leave for both counsel to examine petitioner's doctor, a Dr. Fernand N. Parent, on Wednesday, May 8, 1991 which would then, after transcription, be submitted to the court for its consideration in this appeal.

Appellant, Tonini, filed the transcript of the doctor's deposition and his supporting brief in the Prothonotary's Office of Westmoreland County on May 10, 1991 but failed to notify the court of the same. The court subsequently on May 23, 1991 received a copy of the transcript of the doctor's deposition, together with a copy of the appellant's

brief. The Commonwealth did not submit their brief until June 24, 1991, hence the delay in filing this opinion.

## OPINION

The testimony taken on April 22, 1991 reveals that on September 8, 1990, appellant, Roger Tonini, was arrested by Officer Hugh Shearer of the Rostraver Township Police Department on a charge of driving under the influence of alcohol. Officer Shearer drove Mr. Tonini to the police station, where a breath intoxilyzer test was administered.

Mr. Tonini accepted ARD on his DUI charge. He was also notified, however, that his license was suspended for a "refusal" to submit to the intoxilyzer test. This appeal from that suspension centers on whether or not the defendant "refused" a breathalyzer test.

A total of four tests were administered to Mr. Tonini. He testified quite explicitly that he tried to satisfy the demands of these tests to the best of his ability. Both the appellant and Officer Shearer, through their testimony, agree that it was Officer Shearer, and not the appellant, who terminated the testing. Although Mr. Tonini attempted to satisfy the testing apparatus by blowing through the tube as he was instructed, he was unable to expel a sufficient volume of air to satisfy the criteria of producing two consecutive tests which would meet the machine setting.

Through his testimony, Mr. Tonini made it clear that, although he attempted to satisfy the testing criteria, he was prevented from doing so by a respiratory inadequacy. In support of that contention, he has submitted the deposition testimony of his treating physician, Fernand N. Parent, M.D. Dr.

Parent has described Mr. Tonini as a "pulmonary cripple" (Parent deposition at 16), with both obstructive and restrictive lung disease (Parent deposition at 3).

Officer Shearer provided his interpretation of Mr. Tonini's efforts at the intoxilyzer machine. Dr. Parent cast his own view point on those efforts as follows:

"Unfortunately, a good effort by Roger Tonini might be interpreted by anyone, even myself, as not being a totally comprehensive effort; however, after reviewing his machine printout, I realize that even though he tried very hard he was unable to do what we would consider a normal effort because of the obstructive and restrictive disease.

"What occurs, he will take a deep breath as best he can. He can't get a lot of air in. If he would try to exhale at a rapid rate, he can't get it out fast nor a lot of volume. He may go through a lot of physical gyrations in an attempt to do this procedure. If you hold your hand in front of his mouth or face or nose, you would feel little or no air flow. There isn't much force and not a lot of volume." (Parent deposition at 10-11.)

In order to justify a suspension for refusal to submit to a breathalyzer test, the appellee must prove that the appellant was placed under arrest for driving while intoxicated, was requested to submit to a breathalyzer test, and refused to do so. *Department of Transportation v. Hanes,* 49 Pa. Commw. 407, 411 A.2d 571 (1980). In this case, the two initial requirements have been satisfied: that Mr. Tonini was placed under arrest and was requested to submit to a breathalyzer test. However, it is clear that Mr. Tonini did not refuse to take the test.

At no time did Mr. Tonini ever make any indication that he was not willing to be tested through an

intoxilyzer. Indeed, he tried on four separate occasions to satisfy the testing apparatus. While Officer Shearer has been trained in the use of an intoxilyzer, he does not know the volume of air necessary to satisfy the machine. He testified that the machine was satisfied when a light and/or audible signal was produced. It must be presumed, however, that the machine's requirements are predicated on a normal individual. In this regard, Officer Shearer testified that the same test was administered regardless of pulmonary health, regardless of age, and regardless of physical condition; and that the same test would be given to either an athlete or a retired coal miner (or a steel mill worker like Mr. Tonini with adverse occupational exposure; Parent deposition at 9.)

A simple declaration of an inability to perform the test, absent supportive medical proof, will not justify a refusal. Similarly, acquiescing to the test and then failing to provide sufficient breath also will not justify a refusal absent medical corroboration. *Department of Transportation v. Medalis,* 24 Pa. Commw. 12, 354 A.2d 43 (1976). In this case, however, the appellant *has* offered corroborative medical testimony. Dr. Parent has made it clear that Mr. Tonini "is the kind of fellow that would have problems blowing out his own birthday candles." (Parent deposition at 6.) When Mr. Tonini blew into a machine set to evaluate his capacity as compared to that of a "normal" individual (the "normal" individual contemplated by an intoxilyzer) his ability was as low as 14 percent of "normal." (Parent deposition at 23.)

The fact that Mr. Tonini satisfied the intoxilyzer test on two occasions does nothing to change the fact that his pulmonary disease prevented him from ultimately satisfying the legal test of providing two consecutive sufficient air samples. In fact, the more

Mr. Tonini tried to breathe hard, the more he became fatigued, the less oxygen saturation he experienced, and the worse he did on repeated testing. (Parent deposition at 23.)

Dr. Parent's testimony in this case is similar to that offered in the case of *Commonwealth of Pennsylvania v. Condrath,* 74 Berks L.J. 115 (1981). In that case, the testifying physician stated as to the appellant's problem: "you can get air in easily, but it is hard to get out." In this case, Dr. Parent stated similarly: "he can't get the volume of air and he can't get the speed in air passage into his tracheobronchial tree and out his mouth in a forceful enough effort." (Parent deposition at 6.)

Finally, Dr. Parent's testimony serves to prove what the effects of Mr. Tonini's efforts would have been on the specific date of September 8, 1990, the date he was compelled to undergo the intoxilyzer testing. Dr. Parent's studies of Mr. Tonini followed that incident by only 17 days, on September 25, 1990. Dr. Parent testified specifically that "it wouldn't be expected that there would be any major difference between September 8 and September 25, if any at all. September 25 might be a little bit better if he quits smoking even for a few short weeks." (Parent deposition at 7.) There were no colds or any other respiratory conditions that afflicted Mr. Tonini and would have made the pulmonary function testing of Dr. Parent any different from the intoxilyzer testing of Officer Shearer. (Parent deposition at 9.)

There is no dispute that Mr. Tonini actually submitted himself to the intoxilyzer test as instructed by Officer Shearer. There is no dispute that he did attempt to satisfy the machine, and, in fact, did so on two occasions. However, it is equally clear that his respiratory condition prevented him from

satisfying the legal requirement of sustaining enough air flow to provide two consecutive samples of sufficient strength.

This court clearly finds as a fact that it was not Mr. Tonini's intent, attitude or purpose to defeat the intoxilyzer machine—it was his pulmonary disease which affected his ability rather than any knowing refusal on his part. This court also finds as a fact that the supporting medical testimony of Dr. Parent, in this regard, is entirely credible. As a result, his appeal should be sustained.

## ORDER OF COURT

And now, June 26, 1991, after hearing and review of the briefs of the above entitled matter, it is hereby ordered, adjudged and decreed that the appeal of appellant, Roger Tonini, is hereby sustained and this court is directing the Department of Transportation not to suspend his license for one year as a result of his inability to legally take a breathalyzer test.